3-14-0137, People of the State of Illinois, Appellee by Thomas Laredo v. Robert Nunn, Appellant by Aaron Johnson  Good morning, your honors, counsel. May it please the court. My name is Aaron Johnson, I'm with the Office of the State Appellate Defender, and I'm here representing the defendant in this case, Mr. Robert Nunn. Mr. Nunn was found guilty after a jury trial in this case of armed robbery and two counts of first degree murder, including felony murder. This is a direct appeal from that trial. I'd like to begin this morning by addressing the first issue which we raised in our brief, which is that the trial court in this case erred in excluding from evidence documents offered by Mr. Nunn at trial. Those documents contained transcripts of Facebook messages between Mr. Nunn and the state's main witness, Brandon Mitchell. Those messages set up a meeting between Mr. Nunn and Mr. Mitchell on the day the shooting occurred, on the street the shooting occurred, where Mr. Mitchell was going to purchase a gun from Mr. Nunn for $150. Now, as we've laid out in our opening brief, the authenticity of these documents was sufficiently established by the defense at trial, and therefore they should have been admitted. Now, the state in their brief does concede that authenticity was established at the trial level, and the state contends that authenticity is not the issue. The state in their brief contends that the reason these messages should not have been admitted is because they bore on a collateral matter and were not relevant to this case. But both the state in their brief and the trial court below misinterpret what's a collateral matter and what's relevant in this case. These messages were certainly relevant, and as the court's aware, relevant evidence is any evidence that has a tendency to make proof of material fact more or less likely. In this case, these messages were relevant because it's very relevant to these charges whether Mr. Nunn received $150 from Mr. Mitchell as part of a voluntary gun sale on that day, or if, as the state's theory goes, Mr. Nunn received $150 from Mr. Mitchell by use of force as part of an armed robbery. And these Facebook messages tend to make it more likely that this was a gun sale and this money changed hands voluntarily as part of that sale. In this case, Mr. Nunn was charged with armed robbery and felony murder predicated on armed robbery. So the state was required to prove all the elements of the predicate offense of armed robbery here. The state needed to prove that Mr. Nunn was committing an armed robbery, that he was taking U.S. currency by threat of force or use of force from the person of Brandon Mitchell. And that's why these Facebook messages go to the heart of the issue in this case. The state illustrates this clearly in their brief. They talk about the defendant's claims of self-defense. In their brief, they say, well, self-defense doesn't matter here because this is a felony murder and you can't have self-defense in felony murder. It only matters whether or not the defendant was committing the felony of armed robbery. And the state says that. The only issue is whether or not he was committing a felony. Well, these messages go directly to counter the state's theory that Mr. Nunn was committing a felony at this time. The only evidence the state presented at trial that there was an armed robbery was the testimony of Brandon Mitchell. Now, Brandon Mitchell testifies at trial that he, by chance, encounters the defendant on Latrobe Street where the shooting takes place. Mr. Mitchell testifies that he was just driving around and was avoiding the police and gets onto the street. And lo and behold, there's Mr. Nunn. Mr. Mitchell claims that he was going to purchase drugs for Mr. Nunn, so Mr. Nunn gets in the vehicle. And Mr. Mitchell's testimony is that when Mr. Nunn gets in the vehicle, he pulls out a gun and Mr. Mitchell says he threw $150 in the backseat, believing himself to be robbed. Now, $150 was found at a co-defendant's house and linked to Mr. Nunn. But that's the state's entire evidence that there's an armed robbery here. And that evidence is contradicted by both Mr. Nunn's account and the Facebook messages, which support Mr. Nunn's account. Mr. Nunn testifies that he and Mr. Mitchell exchanged Facebook messages on the day of the shooting, that they agreed to meet on Latrobe Street, and that Mr. Mitchell agreed to purchase a gun from Mr. Nunn for $150. And Mr. Nunn says he gets to Latrobe Street, Mr. Mitchell pulls onto the street, Mr. Nunn says he gets in the car, and then Mr. Mitchell hands him $150, and he hands Mr. Mitchell a gun, as they agreed. At that point, Mr. Nunn testified that Mr. Mitchell handed the gun to the victim, Kellen Drummond, who then examines the gun and becomes angry because the gun was not the same caliber as was discussed in the Facebook messages. Drummond then turns the gun on Mr. Nunn, who, believing himself to be in danger, pulls out his own gun, at which point Mr. Drummond shoots Mr. Nunn in the belly twice, and Mr. Nunn returns fire in self-defense. The Facebook messages support Mr. Nunn's testimony at trial. The price of the gun, the $150, which we know was later found, was in those Facebook messages. The location of where they were going to meet, Latrobe Street, is also in those Facebook messages, and the Facebook messages are time-stamped for about an hour, an hour and 20 minutes before this shooting occurs. If these Facebook messages corroborate Mr. Nunn's version that there was no armed robbery, and if there's no armed robbery, there's no felony murder, and if there's no felony murder, self-defense is available to Mr. Nunn. And that's why it's so important that these messages be able to be presented in this case. Justice requires that a defendant be given every opportunity to counter the state's proof. And in this case, Mr. Nunn was unreasonably denied the opportunity to offer evidence that would impeach the state's main witness and counter the state's theory of the case. And as I've just talked about, the evidence was relevant, and it was authenticated. And the exclusion of the evidence, therefore, was unreasonable, and it was an abuse of discretion by the trial court to exclude this evidence. Now, the state, in their brief, argued that this was harmless error, because there was overwhelming evidence of the defendant's guilt here. But I would submit that there was not overwhelming evidence, looking at the record and the facts in this case, of the defendant's guilt. What there is overwhelming evidence of is that Mr. Nunn shot Mr. Drummond. But there's also overwhelming evidence that Mr. Drummond shot Mr. Nunn. The issue in this case wasn't whether or not Mr. Nunn shot the victim. The issue is why, and whether or not it was a self-defense. So, in this way, the only evidence the state presented as to who shot first and why the shots occurred is the testimony of Brandon Mitchell, which is why these face-off messages were so essential. They contradict Mr. Mitchell's version of events. They impeach his testimony. And they support the proposition that Mr. Nunn was not committing an armed robbery when this occurred, but was engaged in the sale of a gun. And then self-defense becomes an available defense. So, in this case, the exclusion of the face-off messages was not harmless, because it curtailed Mr. Nunn's ability to counter the state's evidence and present a defense. And it's for that reason we believe that Mr. Nunn should be granted a new trial because of that exclusion. And if there's no questions on that issue, I'd like to talk about my second issue, which is that the trial court abused its discretion in sentencing Mr. Nunn to life in prison. Now, in this case, Mr. Nunn was subject to a mandatory 20 years on the murder charge. And then, as a result, because this is a murder where the evidence showed that Mr. Nunn had pulled the trigger, he was subject to a mandatory add-on of 25 years to life. Now, the court in this case sentenced Mr. Nunn to the maximum, which was life in prison. And, as we've argued in our brief, the imposition of a life sentence was an abuse of discretion by the court here. The only reason, or the only reasoning, that the trial court gave on the record for the imposition of the maximum life sentence was a statement it made to Mr. Nunn, which was, if you're man enough to pull the trigger, you're man enough to do life. That's the statement the court made. And that statement supports the idea that the court didn't use its discretion. It applied a particular sentence based on the offense. If you pull the trigger, then you do life, which makes this suggest that it's categorical. And it certainly points to the fact that the judge in this case did not consider the specific circumstances of this offense and the characteristics of this defendant. As we've discussed in our brief, Mr. Nunn was just six months past his 18th birthday when this offense occurred. He was, in fact, still in high school. And while he did have some prior offenses, he had no violent offenses when this occurred. And I know that in our brief we've included Miller v. Alabama, which is not controlling here, but I think it is instructive. Even though this was a discretionary sentence and the defendant is 18, common sense would say nothing magical happens between when someone's 17 years and 11 months old and when they turn 18 in that last month. Just because Mr. Nunn was 18 years, six months old, the reasoning of Miller with regards to adolescence and development are still very relevant. And Miller tells us that punishment should be graduated and proportional to both the offense and the offender. And that adolescents are subject to significant change as they mature. And it's for that reason that youth should weigh against the imposition of a life sentence. In this case, the sentence was discretionary, not mandatory. And the court here, in imposing the maximum sentence, didn't consider Mr. Nunn's youth or his rehabilitative potential. And I think the court's statement really shows, if you're a man enough to pull the trigger, you're a man enough to do life, that the court was making a categorical approach. This offense equals a life sentence. And not considering, as it's required to, the circumstances of the offense and the characteristics of this particular defendant. So for that reason, we'd be asking this court to reduce Mr. Nunn's sentence to 45 years, which we believe is an appropriate sentence, given the circumstances not only of this offense, but the characteristics of Mr. Nunn. So we'd ask this court to reduce the sentence if the court doesn't grant Mr. Nunn a new trial based on our first issue. There's no questions? Thank you. Thank you, Ms. Johnson. Mr. Arado. May it please the court. Good morning, Your Honors. Counsel. The Facebook pages at issue were initially being argued regarding the authenticity or authentication, excuse me. And we note that the trial judge ultimately said that authentication would not be a problem as long as the appropriate testimony was set forth. So regarding the first issue, yes, we see that that wasn't the basis for the trial judge keeping out the Facebook pages. He looks at and appeared to struggle a bit with the Illinois Supreme Court case of Harris, which was cited in our brief, in which the witness had been involved or in a car at the time of a murder. And there was discussion about, well, weren't you, or the defense counsel was trying again to admit that he was involved with this drug operation. And obviously the witness didn't want to talk to that. But regardless, the trial judge kept it out. And the Illinois Supreme Court said that that was relevant, it was collateral, and therefore doesn't go to the issue of what happened in that car, what happened at the time of the killing. And that's the basis for why Judge Corey kept these Facebook pages out in this case. So relevancy went to the heart of Judge Corey's decision. Our position is that we're supporting that decision because it does not inform necessarily what occurred once that, once the defendant and Sergio Herron got into that car. It only, if it's found to be admissible, supports or is cumulative of what the defendant testified to, what happened in that car was an undisputed defendant shot the victim. Now Mitchell testified that it was a drug sale. The defendant testified that it was a gun sale. Judge Corey found it didn't matter whether it was a gun sale or a drug sale because what happened once, what happened inside the vehicle. Mitchell says he saw the gun, threw the money back, and the defendant started shooting and the victim started shooting back. Well, isn't it relevant whether it was a gun deal gone bad or an armed robbery? Well, it is relevant only in the sense that why were they in the car? But the Facebook pages only say, I want to sell you a .357. The only person who testified that he gave a .38 to Mitchell is the defendant. The only evidence, there is no other evidence connecting that .38 to the defendant. It could just as easily have been believed by the jury that this meeting was set up for a robbery for the money with the, ostensibly based on a gun sale. So what we're focused on is what happened inside their vehicle. And what also informs us as to the nature of the crime is defendants lying frequently. Initially, when interviewed at the hospital, he denies any involvement. He then tells the cops that it was somebody running up to the back of the vehicle and the victim started shooting. Then at the trial, he testifies that, well, the victim shot me first and then I managed to get my .45 out, put it in my right hand and started shooting over the right side of the seat. The testimony, the physical evidence by the medical examiner was that the bullets came from the left and from upper, going towards the upper side. So it's completely contrary to what defendants testify to at any point. So even if these Facebook pages had been admitted, it wouldn't have changed the result is what our ultimate position is. As to the sentencing, we point out that, you know, she says, well, there's only one statement made by the judge. Well, the judge actually said that he considered the PSI. He considered the factors in aggravation and mitigation. He considered the impact statement as well as the effect on crime on others and the mother of the defendant. He made a discretionary decision to impose life sentence based on weighing of the factors in aggravation and mitigation. There's no requirement that he set forth exactly which factors in aggravation he says or which factors in mitigation. Once he says, I've considered these things, that's sufficient. So, you know, under Alexander, you know, what the defendant is asking for is this court to re-weigh the factors in aggravation and mitigation and reduce the sentence to essentially the minimum, 45 years. Even if this court were to find that there's an abuse of discretion, we would ask not to reduce it to the minimum, but at least send it back for a new sentencing hearing so the judge can impose an appropriate sentence, which we think life sentence is appropriate. Why? You look at this guy's record. He had juvenile delinquency findings, which he failed the probation multiple times on. He had an adult conviction, which he failed probation on or conditional discharge on. He had a pending gun charge. The rifle was found with his fingerprints on it. And he was out on bond at the time this crime was committed. Also, he has a long history of school discipline. And he had order of protection against him based upon violent attack on some young man. So it's entirely appropriate, given the heinous nature of this crime, plus his long history, even though he's only 18 and a half at the time the crime was committed, it was appropriate to institute this life sentence. Also, as far as Miller v. Alabama goes, there's no application whatsoever. He's over 18. There's a discretionary life sentence. The U.S. Supreme Court in Roper said we're drawing a bright line at 18. So there's really nothing to consider regarding Miller's application in this case. If there are no other questions, we would ask that this Court affirm both the conviction and the sentence. Thank you, Your Honor. Thank you, Mr. Rado. Ms. Johnson, you have a vote. Thank you, Your Honor. I'd like to briefly touch on what counsel said. Both the trial court below and the state in their brief improperly rely on Harris, and I think it misinterprets how Harris applies, because the state and the trial court seem to be using Harris to say it never matters where someone is before they witness a murder. But that's not what Harris was about. In Harris, the witness was at a street corner where he was picked up by the defendant and then driven 15 minutes away to a different location where he witnessed a murder. And the court said, well, it's collateral to ask him what his purpose was to be on that street corner 15 minutes before the murder at a different location. And I would agree it is, but that's not what we have here. The issue here is this all takes place on the same street in the same car as the shooting, so it's not collateral. It's very relevant, as I've discussed. And I don't believe that it is cumulative, as counsel says. The Facebook messages would have perfected the defendant's impeachment of Brandon Mitchell, and they would have corroborated the defendant's version of events. And so certainly just having the defendant say there were these Facebook messages without the proof is not the same as having these Facebook messages. And certainly it doesn't perfect the impeachment of Brandon Mitchell, which is the state's witness that they're relying on for this armed robbery. And as the court asked, doesn't it matter if it's a gun sale versus a drug sale? And I submit again that it does, because the charge here was armed robbery, and it was predicate offense for felony murder. So how that money changes hands is essential in this case. Does the money change hands voluntarily because Mr. Mitchell already agreed to give Mr. Dunn $150 for this gun? Or does it change hands because there's use of force by Mr. Dunn? And that's central to this entire case. So I think that counsel makes a point about, well, there was a $357 in the Facebook messages versus the $38 that was actually in the car. The evidence, in order to be relevant, needs to have a tendency to make proof of material fact more or less likely. The fact that the Facebook messages don't perfectly explain everything doesn't mean they're not relevant. And the defendant testified at trial, well, I said it was a $357 because it's worth more, but really it was a $38. Again, those are all issues for the trier of fact to decide whose version they believe. But certainly the fact that there is the messages about a gun sale and the specific price, and it's the amount of money that Mr. Mitchell says was taken from him, and the amount of money that's found later, makes this highly relevant. Let me just switch this a little bit, because it's not an unusual scenario. People go out and agree to buy drugs, and yet the seller realizes he's not selling any drugs, he's just going to take the money and maybe shoot the person who set him up. And so the person comes there with the agreed-upon money, and then often the guy takes the money,  so you still got an armed robbery even though they met because they agreed to have a drug sale. When it turned out the seller was going to be an armed robbery. It happens frequently. And so what's the difference whether armed robbery, the deal was set up for a gun or drugs, as to whether or not there was an armed robbery as opposed to a gun transaction? I guess I would say that, in point of fact, it doesn't matter whether, in a general proposition, did we agree to meet and sell drugs, did we agree to meet and sell a gun. The reason it matters in this particular case is because it does matter whether, in any case it would matter, do we have a prior agreement to meet. So in this case, these Facebook messages show there's a prior agreement to meet, which is not what the state's witness says. Also, we have a prior agreement to exchange money. And the Facebook messages corroborate the defendant's contention that he got there, he had the .38, obviously the messages said .357, the defendant explains that, he exchanges the gun for money, and then the gun is turned on him when they're unhappy about the fact that it's not the right caliber. So in this factual scenario, it is relevant whether or not they met for the purpose of selling this gun, or because Mr. Mitchell was just wandering around South Peoria looking for drugs as he testifies. And more to the point, it does completely impeach the state's main witness, Mr. Mitchell, as to what he was doing that day. So in that way, these messages go to the heart of the defendant being able to present his defense. So for this factual scenario, I do believe they were relevant. And I would just, in touching on the sentencing issue, as counsel brought up, even assuming the court, I know the court did say, I considered the factors in aggravation mitigation, even assuming the court did consider those factors, we still would argue this was an abuse of discretion. A life sentence given this defendant and these circumstances was excessive, and it was an abuse of discretion by the court. But I still would submit that the court's comments certainly imply that he approached this categorically, that if you pull a trigger, you do life, and didn't consider the specific circumstances in this case. And that's why it was an abuse of discretion. And so we'd ask, again, that this court first grant Mr. Nunn a new trial because he was not able to present these specific messages that were so essential to his defense. And if the court does not grant that new trial, that we'd ask that this court reduce Mr. Nunn's sentence. Thank you. Thank you, Ms. Johnson. And Mr. Corrado, thank you as well. We are, today, going, so I hope to get this over with before it goes all together. We will take this matter under advisement, get back to you with a written disposition within a short time. We'll now take a short recess for panel discussion. Thank you.